DARREN MARCUS SALVIN (SBN 204807)
SALVIN LAW FIRM
1570 La Loma Road, Suite One
Pasadena, CA 91105
(323) 255-5600
dms@salvinlawfirm.com

JOHN R. SOMMER (SBN 106355)
ATTORNEY-AT-LAW
17853 Santiago Blvd., Suite 107-160
Villa Park, California  92861
(949) 752-5344, Fax: (949) 752-5439
SOMMER@SOMMER.LAW

Attorneys for Plaintiffs
JERRY JAMGOTCHIAN,
THETA HOLDING I, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JERRY JAMGOTCHIAN; THETA HOLDING I, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA HORSE RACING BOARD; GREGORY L. FERRARO; OSCAR GONZALES; DENNIS ALFIERI; DAMASCUS CASTELLANOS; BRENDA DAVIS; THOMAS C. HUDNUT; WENDY MITCHELL; <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR: <br><br> 1. VIOLATION OF U.S. CONSTITUTION, FIRST, FIFTH AND FOURTEENTH AMENDMENTS; <br><br> 2. VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983); <br><br> 3. VIOLATION OF CALIFORNIA CONSTITUTION <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs Jerry Jamgotchian and Theta Holding I, Inc. (collectively "Plaintiff"), by their attorneys, allege as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1341 and 1343(3) as it involves claims arising under the United States Constitution and Civil Rights statutes. This Court has supplemental subject-matter

COMPLAINT; DEMAND FOR JURY TRIAL

jurisdiction over all other claims pursuant to 28 U.S.C. §1367 because they are so related that they form part of the same case or controversy.

2. This Court has personal jurisdiction over Defendants in that they are committing civil rights violations in the State of California in the Central District of California or are committing such acts knowingly or should have reasonably expected that they would cause damage to a person therein.

3. Venue for this action is proper in the Central District of California pursuant to 28 U.S.C. §1391(b), in that a substantial part of the events giving rise to the claim occurred in the Central District of California, including damage suffered here.

## **PARTIES**

4. Plaintiff Jerry Jamgotchian is an individual, who is a citizen of the State of California and of the United States and is entitled to the protection of the laws and Constitutions of the United States and the State of California and the laws of the United States and California.

5. Plaintiff Theta Holding I, Inc. is a registered California corporation and is entitled to the protection of the laws and Constitutions of the United States and the State of California and the laws of the United States and California.

6. Plaintiff Jerry Jamgotchian and Plaintiff Theta Holding I, Inc. are collectively referred to herein as "Plaintiff" unless individually addressed.

7. Defendant California Horse Racing Board ("CHRB") is established by the State of California under the "California Horse Racing Law," California Business & Professions Code ("BPC") 19400, *et seq.*, and specifically, BPC 19420. The CHRB is governed by a Board. BPC 19421. The Members of the Board currently are Defendants Gregory L. Ferraro, Chairman; Oscar Gonzales, Vice Chair; Dennis Alfieri; Damascus Castellanos; Brenda Davis; Thomas C. Hudnut and Wendy Mitchell. Defendant CHRB and the foregoing Members of CHRB are collectively referred to as "Defendants." At all times mentioned in this pleading, the CHRB has

COMPLAINT; DEMAND FOR JURY TRIAL

been and is now the agency charged with administering California Business and Professions Code ("BPC") § 19400 et seq. and the California Horse Racing rules ("CHRB Rules"). Each of the individual defendants are now and at all times relevant hereto were acting in their official capacity as Chairman, Vice Chairman or Member of the Board, in doing the things hereinafter alleged.

8.     The CHRB office that issued the Board of Stewards decision that is the subject of this action is located at 4961 E. Katella Avenue, Los Alamitos California 90720, in the Central District of California.

## ALLEGATIONS IN SUPPORT OF ALL CLAIMS

### Horse Named *Malpractice Meuser*

9.     Plaintiff is the holder of California Horse Racing Board ("Board") license 241732 and is the owner of the three-year old thoroughbred colt named *Malpractice Meuser*. Plaintiff is the holder of all rights and privileges relating to this thoroughbred and his naming rights.

10.     *Malpractice Meuser* was foaled in Great Britain on January 23, 2019. He is registered with the jockey club's thoroughbred registry for that country. Exhibit 1 ("Jockey Club Certificate") (hereinafter *Malpractice Meuser* is sometimes referred to as "approved name"). The manager of the General Stud Book Registry is Weatherby's, who is associated with Weatherby's bank.

11.     The federal Horseracing Integrity and Safety Act of 2020 ("HISA Act") (H.R. 1754) provides for the creation of the Horseracing Integrity and Safety Authority ("HISA"). HISA's enforcement rule was approved by the Federal Trade Commission. *See*, *Order Approving the Enforcement Rule Proposed by the Horseracing Integrity and Safety Authority*, March 25, 2022.

12.     HISA has "independent and exclusive" authority over, among other things, the "welfare and integrity" of "covered horses, covered persons, and covered horseraces." HISA Act, Section 5(a)(2)(A). Section 2(4) states: The term ''covered horse'' means any Thoroughbred horse. . . .'' The HISA Act expressly provides for

COMPLAINT; DEMAND FOR JURY TRIAL

the registration of all thoroughbred racehorses. *Malpractice Meuser* has been registered by HISA. Specifically, *Malpractice Meuser* has been registered under his name and registered as H-000-018-233 in the official HISA records. Exhibit 2.

. The HISA Act provides:

> The rules of the Authority promulgated in accordance with this Act shall preempt any provision of State law or regulation with respect to matters within the jurisdiction of the Authority under this Act. HISA Act, Section 5(b).

13. HISA's exclusive authority extends to all "covered horses" (which are in the United States, including foreign-bred horses like *Malpractice Meuser*) and any "provision of State law or regulation" that interferes with HISA's activities is explicitly preempted by the HISA Act. The name *Malpractice Meuser* is a necessary part of HISA registration and has already been made part of that registration with HISA's approval. It would interfere with HISA's exclusive responsibilities if the CHRB could (as it did) refuse to give full force to the HISA registration, or if the CHRB could require HISA (or Plaintiff) to change the HISA registration for *Malpractice Meuser* (tantamount to what CHRB is forcing Plaintiff to do). One of the purposes of the HISA Act was national uniformity for horseracing. *Malpractice Meuser* has been registered by HISA and has already raced in Indiana and West Virginia under that name without any dispute or incident. California's contrary action is therefore expressly pre-empted. To allow California to require a change in the HISA registration or refuse to give full faith and credit to the HISA registration would interfere with HISA's activities as mandated by federal law and expressly adopted and overseen by the Federal Trade Commission. To allow California to do so would interfere with national uniformity for horseracing.

14. The State of Indiana accepted the above-mentioned Jockey Club Certificate and allowed *Malpractice Meuser* to race on October 14, 2021. There was

no public disturbance due to the name of *Malpractice Meuser* when he raced in Indiana. Exhibit 3.

15. The State of West Virginia also accepted the above-mentioned Jockey Club Certificate and allowed *Malpractice Meuser* to race on June 30, 2021. There was no public disturbance due to the name of *Malpractice Meuser* when he raced in West Virginia. Exhibit 3.

**Attempt to Enter to Race**

16. Plaintiff attempted to enter *Malpractice Meuser* to race at Los Alamitos Race Course (which is located within the Central District of California) and made a formal request on June 15, 2022.

17. The CHRB's Los Alamitos Board of Stewards issued rulings on July 1 and July 2, 2022 (collectively "Stewards Decision"). The Stewards Decision refused permission for *Malpractice Meuser* to race in California. The sole reason for denial of the entry was the lack of a certificate of registration for *Malpractice Meuser* from The Jockey Club of New York, a private club which is not a governmental entity (hereinafter "New York Private Club"). The sole reason, in turn, the New York Private Club refused to issue a certificate of registration was the name *Malpractice Meuser*. Exhibit 4.

18. Had a government agency refused to register *Malpractice Meuser* it would have been unconstitutional viewpoint discrimination without question. The Defendants cannot act unconstitutionally by delegating that unconstitutional viewpoint discrimination decision to a non-governmental agency and then adopt such decision as final. If that were allowed, then governments could discriminate without limitation. For example, could a city delegate the granting of parade permits to a non-governmental agency, and then adopt that non-governmental agency's viewpoint discriminatory decision?

## **Exhaustion of Administrative Remedies**

19.    On July 4, 2022, Plaintiff Jamgotchian filed a timely appeal of the Stewards Decision to the Board of the California Horse Racing Board (hereinafter "CHRB") and requested a stay of the decision pursuant to Rule 1762.  The CHRB, acting through its Chairman, denied the stay on July 5, 2022.

20.    On July 20, 2022, a hearing took place before a Hearing Officer appointed by CHRB.  The hearing officer issued a Proposed Decision on August 29, 2022.  Without giving a copy of the Proposed Decision to Plaintiff, nor allowing him to address the CHRB, the CHRB approved the Proposed Decision and issued a Decision (hereinafter collectively "Decision") on September 15, 2022.   Exhibit 5. The Decision was to affirm the denial of *Malpractice Meuser* entry to race.  The Decision is now the final decision of the CHRB.   Plaintiff has exhausted all administrative remedies.

21.    Defendants, by the denial of entry to race, have under color of law, deprived Plaintiff of his rights under the United States Constitution and laws, and the California Constitution and laws, as hereinafter averred.  Such action was denial of the privileges and immunities granted to citizens of the United States.

22.    The reasons why the CHRB has violated Plaintiff's civil rights are described in more detail in this Complaint and evidence submitted below.

23.    This is not the first time that the CHRB has shown its prejudice against Plaintiff as shown by its prior unlawful actions against Plaintiff.   *See, e.g.*, *Jamgotchian v. Slender*, 170 Cal.App.4th 1384 (Cal. Ct. App. 2009) 89 Cal. Rptr. 3d 122 (2009).

## **Unconstitutional Viewpoint Discrimination**

24.  The government may not regulate speech "because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosle*, 408 U.S. 92, 95 (1972).  *See also*, *Regan v. Time, Inc.,* 468 U.S. 641 (1984).  Specifically relevant to

this matter, the United States Supreme Court has repeatedly ruled against governmental rejection of speech that is considered disparaging, scandalous or immoral. *See*, *e.g., Iancu v. Brunetti*, 588 U.S. ___ (2019)(Docket No. 18-302); and *Matal v. Tam*, 582 U.S. ___ (2017)(Docket No. 15-1293).

25.   Government regulation of speech is content-based if the regulation on its face draws distinctions based on the message a speaker conveys. *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989); *see also Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48 (1986) (holding that content-neutral "speech regulations are those that are *justified* without reference to the content of the regulated speech.")(internal quotations and citations omitted).

26.   Viewpoint discrimination is an especially disfavored form of speech regulation. *Matal*, 588 at ____. (Kennedy, J. (plurality opinion) (Docket No. 15-1293)).

27.   *Malpractice Meuser* was refused entry to race *solely because of his name*. Specifically, he was refused entry because his name allegedly was disparaging. Although not necessary to establish, as shown in the undisputed evidence below, *Malpractice Meuser*'s name is not disparaging in California (nor in Indiana, West Virginia and many other states that conduct horseracing) .  It is clear that CHRB could not refuse entry to race because of *Malpractice Meuser*'s name because there is no compelling governmental interest in prohibiting the use of *Malpractice Meuser's* name in California, nor even a substantial governmental interest.

### **Adoption of Non-Government Entity's Decision is State Action**

28.   CHRB's refusal to allow *Malpractice Meuser* to race in California was based solely upon the New York Private Club's refusal to grant a registration certificate to *Malpractice Meuser*.  It is undisputed that *Malpractice Meuser* is a thoroughbred (*see* Exhibit 1), is registered by HISA (*see*, Exhibit 2) and is entitled to race as a thoroughbred in other states and specifically in California, but-for the absence of registration by the New York Private Club.   It is undisputed that

*Malpractice Meuser* is a thoroughbred and is entitled to be registered by the New York Private Club, pursuant to HISA.

29.    The sole reason the New York Private Club refused registration to *Malpractice Meuser* is that the New York Private Club decided, arbitrarily and capriciously, that his name allegedly violates the New York Private Club's Rule 6.F.11 (a rule, itself, constitutionally void for vagueness).   That rule purports to prohibit "Names that appear to be designed to harass, humiliate, or disparage a specific individual, group of individuals, or entity."   Rule 6.F.11 is viewpoint discrimination because it only prohibits negative viewpoints while allowing positive viewpoints.   *Matal v. Tam*, 582 U.S. ___ (2017).   This ground is identical to "public odium," which was held to be a "content-based distinction on its face.   *See*, *Boos v. Barry*, 485 U.S. 312, 315 (1988), in which the U.S. Supreme Court held that a Washington D.C. ordinance prohibiting the display of signs near any foreign embassy that brought a foreign government into "public odium" or "public disrepute" was a content-based distinction on its face.   *Id.*

30.    The New York Private Club refused to register *Malpractice Meuser* solely because it determined that the name is disparaging. That is explicitly viewpoint discrimination.

31.    The unconstitutional discrimination, as well as the New York Private Club's arbitrary and capricious decision-making, is/are also made clear from the names that The Jockey Club has already approved:   *Malpractice M.D.* (2004) and *Malpractice Mike* (2016).   It has also approved *Meuser* (2011) and *Barrythejuryhanger* (2019).   Yet, it refuses *Malpractice Meuser*.

32.    Even if *Malpractice Meuser*'s approved name might refer to a living or deceased individual with a name that includes "Meuser," or refers to no one at all, it is not a valid ground to prohibit the use of such name.   *Cardtoons v. Major League Baseball Players Ass'n*, 95 F.3d 959 (10th Cir. 1996) (right of publicity is subordinate to Free Speech).

COMPLAINT; DEMAND FOR JURY TRIAL

33.     The CHRB could not constitutionally adopt the equivalent of Rule 6.F.11 under the Supreme Court cases discussed above.

34.     The adoption of a non-governmental organization's decision by a state actor <u>is</u> state action.  *NCAA v. Tarkanian*, 488 U.S. 179 (1988).  Although *Tarkanian* dealt with whether the non-governmental entity is a state actor, it had already been decided in prior litigation between Tarkanian and University of Nevada-Las Vegas, that when the state actor (in that case, the state university) adopts the non-governmental entity's decision (e.g., NCAA), the adoption by the state agency is state action.  This was not disputed by the parties and is implicit in the Supreme Court's decision.  This is exactly what has happened here:  the CHRB's adoption of the decision of the New York Private Club constitutes, without dispute, state action.

### **Unlawful Delegation**

35.  It is clear that a state cannot delegate its decision-making, functioning and authority to non-governmental agencies.

> But would it be seriously contended that Congress could delegate its legislative authority to trade or industrial associations or groups so as to empower them to enact the laws they deem to be wise and beneficent for the rehabilitation and expansion of their trade or industries? . . . The answer is obvious. Such a delegation of legislative power is unknown to our law and is utterly inconsistent with the constitutional prerogatives and duties of Congress." *A.L.A. Schechter Poultry Corporation v. United States*, 295 U.S. 495, 537 (1935)

This is applicable here.  The CHRB delegated the regulation of content to a non-governmental organization.  *Schechter*, often called the "Sick Chicken" case, continues to be good law as to the unlawful delegation of government functions to non-governmental agencies.  For example, building codes can only have force of law if expressly adopted by a government (the non-governmental agency's codes by themselves, until adopted into positive law, have no legal effect).

36.     If the CHRB could not constitutionally regulate content of speech, and specifically, discriminate on viewpoint, can the CHRB delegate that decision to a non-

governmental entity?  The answer is clearly no.  Could the Village of Skokie delegate the granting of parade permits to the Skokie Chamber of Commerce?  And if the Chamber of Commerce refused the parade permit, could the Village government constitutionally refuse the parade permit because it has been refused by the Chamber of Commerce.  Clearly not.

37.    The importance of the non-delegation doctrine is especially relevant in this case.  The New York Private Club is a private member corporation, incorporated in the State of New York.  It has, according to its website, 117 members.  The members are selected by the existing members.  None, or at most a very few members of the New York Private Club are California residents.  It is not authorized to do business in California.  As a review of the New York Private Club's membership list shows, 94% of the New York Private Club's members have traditionally male first names.  98% of the New York Private Club's members have last names that appear to be British, French, German or Italian. It may have one member with a Hispanic last name (i.e., >1%).  It has no persons with Asian-American last names (0%), no persons with Eastern European last names (0%), and no persons from many other groups that make up California.   The members of the New York Private Club are not representative of the citizens of California.

38.    Unlike the New York Private Club, the CHRB is created by and ultimately controlled by the citizens of California.   The people of the State of California act through their elected and appointed representatives, including the Governor of California.  California Constitution, Articles V, Sections 1 and 2.  The Governor appoints the members of the CHRB.  BPC §19421.  Members of the CHRB Board are required to be California residents.  BPC §19421.  The Members of CHRB Board are government appointees.  They are required to act on behalf of the citizens of California.  The members of the New York Private Club do not meet any of these mandatory requirements and are not appointed by the Governor.

**FIRST CLAIM FOR RELIEF**

**(Against All Defendants for Violation of Plaintiff's Rights**

**Under the First, Fifth and Fourteenth Amendments to the**

**United States Constitution)**

39.   Plaintiff incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

40.   Defendants have, under color of law (specifically the Horse Racing Law and regulations adopted thereunder), and in violation of the United States Constitution, laws and regulations, deprived Plaintiff of the rights, privileges, or immunities secured by the United States Constitution and laws, under the First Amendment, Fifth Amendment and the Fourteenth Amendment.   Defendants have likewise, under color of law, deprived Plaintiff of his rights under the California Constitution and California laws and regulations.

41.   The New York Private Club's Rule 6 is blatantly unconstitutional viewpoint discrimination if the Rule, or decisions thereunder, are adopted, applied or accepted by the State of California, including by the CHRB, as state action.

42.   The New York Private Club's Rule 6 is unconstitutional when given effect by the CHRB for the additional reason of vagueness (constitutionally void for vagueness).   A law is unconstitutionally vague when people "of common intelligence must necessarily guess at its meaning."   *Connally v. General Construction Co.*, 269 U.S. 365 (1926).   When Free Speech is involved, there are three reasons why precise guidelines are constitutionally required:

First, due process requires that a law provide fair warning and provides "persons of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."

Second, the law must provide "explicit standards" to law enforcement officials, judges, and juries so as to avoid "arbitrary and discriminatory application."

Third, a vague statute can "inhibit the exercise" of First Amendment freedoms and may cause speakers to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104 (1972).

"[P]erhaps the most meaningful aspect of the vagueness doctrine is not actual notice but the other principal element of the doctrine — the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith v. Goguen,* 415 U.S. 566 (1974).

43.     The regulation of horse names by the CHRB violates the United States and California Constitutions for all three reasons.

44.     The CHRB cannot directly or indirectly (by adoption of a non-governmental entity's viewpoint decision) regulate content based upon the message or the perceived message.    Likewise, the CHRB cannot discriminate based upon viewpoint or regulate content.

45.     The CHRB has granted final decision-making authority to the New York Private Club, which has unfettered discretion to refuse names for any reason and without any guidelines or conditions. The evidence below showed that the New York Private Club is prejudiced against Plaintiff.  It also shows that the New York Private Club's decisions are arbitrary and capricious.   The New York Private Club is establishing rules and deciding matters in which it and some of its members have an interest and a conflict of interest.  A non-governmental entity, such as the New York Private Club cannot provide due process of law, since due process is only provided by the government and courts.

46.     The CHRB has unlawfully granted final decision-making authority to the New York Private Club without any provision to review the refusal of the horse's name by any person appointed by the Governor of California (at least this is what CHRB contends since it explicitly refuses to determine the validity of the horse's name), by California courts, and without a right to a jury trial.    The California Constitution provides that judicial authority is granted to the courts of California.

*Article VI, Section 1*, *et seq*.  There is no provision granting the New York Private Club the ability to exercise judicial authority, conduct a jury trial or provide necessary due process.

47.    The CHRB, and each of the Members of its Board, under color of law, have each caused Plaintiff to be deprived of his right to use his property, namely *Malpractice Meuser*, and to engage in protected activities (naming his horse and racing him in California) as it/he is otherwise entitled to do pursuant to its/his rights, privileges and immunities secured by the Constitution and laws, but for the Defendants' refusal to let *Malpractice Meuser* race solely because the New York Private Club did not like the horse's name.

48.    Plaintiff has no adequate remedy at law and is entitled to injunctive relief, prohibiting the continued violation of his rights under the United States Constitution and laws, and prohibiting the continued denial of his rights as a citizen of the United States and California.

## <u>SECOND CLAIM FOR RELIEF</u>

**(Against All Defendants for Deprivation of Civil Rights, 42 U.S.C. § 1983)**

49.    Plaintiff incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

50.    42 U.S.C. section 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

51.    To succeed on a Section 1983 claim, a plaintiff must prove that his constitutional rights were violated, and that the violation was caused by a person acting under color of law.  *West v. Atkins*, 487 U.S. 4242 (1988).

52.     The Supreme Court has broadly construed the provision "under color of any statute" to include virtually any state action including the exercise of power of one "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" (*United States v. Classic,* 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 [1941]). Thus, the wrongdoer's employment by the government may indicate state action, although it does not conclusively prove it. Even if the wrongdoer did not act pursuant to a state statute, the plaintiff may still show that the defendant acted pursuant to a "custom or usage" that had the force of law in the state. Id.

While acting under color of law, and without excuse, justification, defense or privilege, Defendants have intentionally and unlawfully deprived Plaintiff of  the rights, privileges, or immunities secured by the Constitution and laws, specifically to enter *Malpractice Meuser* to race in California under his HISA registered name.

53.     Defendants' actions in this regard have directly and proximately caused the damages to Plaintiff complained of herein.

54.     Plaintiff has suffered damages in an amount not yet calculated but is in excess of $250,000.

## THIRD CLAIM FOR RELIEF

### (Against All Defendants for Violation of Plaintiff's Rights Under
the California Constitution)

55.     Plaintiff incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

### Unlawful Delegation

56.     The California Constitution provides that government authority is vested in the Governor, the Legislature and the Judicial branch.

> The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.  *California Constitution, Article II, Section 3.*

COMPLAINT; DEMAND FOR JURY TRIAL

57.    The California Constitution provides that executive functions are entrusted exclusively to the Governor.

> The supreme executive power of this State is vested in the Governor. The Governor shall see that the law is faithfully executed.  See, California Constitution, Article V, Section 1

58.    There is no provision in the California Constitution permitting the Governor to delegate governmental decision-making, directly or indirectly (through the CHRB).  There is no provision allowing delegation to a non-governmental, out-of-state, self-selected private club, especially one located in the State of New York.

59.    The California Constitution provides that judicial authority is granted only to the courts of California.  *Article VI, Section 1, et seq*.  There is no provision granting the New York Private Club the ability to exercise judicial authority.

60.    The California Constitution provides that legislative functions are entrusted exclusively to the Legislature.

> The legislative power of this State is vested in the California Legislature...."  See, California Constitution, Article IV, Section 1

61.    An unconstitutional delegation of authority occurs when the legislature: (1) leaves the resolution of fundamental policy issues to others; or (2) fails to provide adequate direction for the implementation of that policy.  Delegations of legislative authority are not permissible if the Legislature engages in a "total abdication" of its decision-making authority.  (Kugler v. Yocum (1968) 69 Cal. 2d 371, 384.).

62.    The Legislature has not delegated authority over horse names to the CHRB.  There is no provision in California  Horse Racing Law granting such authority to the CHRB.   On such an important issue (i.e., involves Free Speech), such delegation cannot be vague, implied or allegedly covered by some non-specific language.  This is especially true since the Legislature was specific about the matters it did delegate.  Accordingly, the CHRB has no authority to review, approve, reject or

COMPLAINT; DEMAND FOR JURY TRIAL
15

otherwise regulate the name of any horse racing in California; or at a minimum, CHRB cannot do so as it has done so here by unlawful delegation of any such final naming rights to a non-governmental, non-regulated, private corporation located in the State of New York.

63.    The California Legislature has never provided the CHRB with any standards or procedures for regulating horse names.   Accordingly, even if the Legislature allegedly delegated authority over horse names (which as mentioned above, it has not), then the Legislature has totally abdicated the decision-making authority.  Accordingly, such alleged delegation is *ultra vires*.

64.    The unlawful delegation here goes even further.  The CHRB explicitly has abdicated any responsibility over horse names, by knowingly delegating its own non-delegable  decision-making to a non-governmental, unappointed, unrepresentative out-of-state private self-selected body (corporation).  Any delegation, or attempted delegation, of horse name approval or rejection to the New York Private Club is *ultra vires* and unconstitutional.

65.    It has never been accepted in federal or California law that legislative authority can be delegated to non-governmental organizations or private clubs.  The people of the State of California act through their elected and appointed representatives, including the Governor of California.   California Constitution, Articles V, Sections 1 and 2.  None of the members of the New York Private Club were appointed by the Governor of California.  It is contrary to the fundamental principles of democracy to have the self-selected, unelected, out-of-state New York Private Club, whose members are not representative of the diversity of California citizens, ultimately decide matters of California public law without due process or judicial review.

66.    The delegation of authority to register horses, and specifically, the names of horses, to a non-governmental, out-of-state private club, whose decisions are not judicially reviewable in California, is unlawful under the California Constitution.  The

California Constitution is explicit that governmental functions must be exercised only by one of the three branches of the California government: the Governor (and those subordinate to her), the Legislature or the judiciary.

### **Unlawful Underground Regulation**

67.    At no time has the CHRB engaged in rulemaking on horse names.  It has never issued any rule concerning horse names (which Plaintiff contends it has no authority to do in any event).  However, the CHRB apparently has a <u>de facto rule</u> to accept the New York Private Club's horse name decisions, and that constitutes an invalid <u>underground regulation</u> contrary to California law.

> If a state agency issues, utilizes, enforces, or attempts to enforce a rule without following the APA when it is required to, the rule is called an "underground regulation." State agencies are prohibited from enforcing underground regulations.  (California Office of Administrative Law, https://oal.ca.gov/underground_regulations/, last accessed October 8, 2022).

68.    Even if the CHRB had the authority to regulate horse names, it has not done so.  The CHRB has never enacted the equivalent of Rule 6.F.11.  *See*, 4 Code of California Regulations (hereinafter "4 CCR").  <u>The CHRB cannot use the subterfuge to do what it cannot do directly because it has no constitutional, statutory or regulatory basis for doing so</u>.

69.    The Stewards Decision errored in not applying the plain language of CHRB Rule 1588.  Specifically, the Stewards Decision did not correctly apply Rule 1588, which incorporates "law," which necessarily includes the United States and California Constitutions.  Furthermore, the Stewards Decision errored in deciding that The Jockey Club (in the United Kingdom and is the original Jockey Club in the world) was not "the Jockey Club" within the meaning of Rule 1588   The Jockey Club and therefore, its Weatherby's registry, is included within the plain language of Rule 1588. Accordingly, the refusal to enter *Malpractice Meuser* (with his Jockey Club and HISA

registration) clearly violates Plaintiff's rights.  The Decision also errors by adding words not contained within the Rule, such as "of New York" or "North American." This is confirmed by the Rule being specific in some instances (other breeds) and non-specific as to thoroughbreds.

70.    The CHRB cannot "amend" Rule 1588 to limit it to Jockey Clubs located in New York or North America (and thereby refusing to recognize the Weatherby's registration) without amending Rule 1588 in accordance with the California Administrative Procedure Act, Cal. Gov. Code Section 11340, *et seq*., and the rules of the Office of Administrative Law, 1 CCR Section 1 to 280.

### **Violation of California Constitutional Rights**

71.    The California Constitution provides, among other rights, the following:

All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.  *Article I, Section 1*

Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.  *Article I, Section 2(a)*

(a)  A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; . . .
(b) A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. . . .  *Article I, Section 7*

Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution. . . .  *Article I, Section 24*

72.    The CHRB has denied Plaintiff his rights under the California Constitution for the reasons averred above.

73.    Plaintiff has no adequate remedy at law and is entitled to injunctive relief, prohibiting the continued violation of his rights under the California Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jerry Jamgotchian and Theta Holding I, Inc., pray for relief against Defendants that:

A.     Each Defendant be enjoined from violating the rights of Plaintiff under the United States and California Constitutions, and the laws and regulations;

B.     The Defendants be ordered to allow *Malpractice Meuser* to enter and race in California;

C.     The Defendants pay damages to Plaintiffs for the violation of their civil rights as provided by law and under 42 U.S.C. Section 1983 in an amount to be proven at trial and in excess of $250,000;

D.     Plaintiffs recover their attorneys' fees;

E.     Plaintiffs recover their taxable costs and disbursements herein; and

F.     The Court grant to Plaintiff such other and further relief as the Court deems just and proper.

Dated:  October 14, 2022              DARREN MARCUS SALVIN
                                      SALVIN LAW FIRM

                                      JOHN R. SOMMER
                                      JOHN R. SOMMER, ATTORNEY-AT-
                                      LAW

                                      John R. Sommer
                                      _____

                                      John R. Sommer
                                      Attorneys for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all issues that are so triable.

Dated:  October 14, 2022                    DARREN MARCUS SALVIN
                                            SALVIN LAW FIRM

                                            JOHN R. SOMMER
                                            JOHN R. SOMMER, ATTORNEY-AT-
                                            LAW

                                            John R. Sommer
                                            _____
                                            John R. Sommer
                                            Attorneys for Plaintiffs

## **EXHIBITS TO COMPLAINT**

Exhibit 1:    Weatherbys registration for *Malpractice Meuser* (GB).

Exhibit 2:    Horseracing Integrity and Safety Authority registration for *Malpractice Meuser* (HISA).

Exhibit 3:    *Malpractice Meuser* race record in Indiana and West Virginia (Equibase).

Exhibit 4:    Board of Stewards Ruling dated July 1 and 2, 2022.

Exhibit 5:    Decision, Proposed Decision, California Horse Racing Board, Case No. 22-0033