UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Melissa H. Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                        Not Present

**PROCEEDINGS: ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [35] AND DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

Following remand from the Ninth Circuit, before the court is a Motion to Dismiss filed by Defendant Gregory L. Ferraro ("Ferraro"), Defendant Oscar Gonzales ("Gonzales"), Defendant Dennis Alfieri ("Alfieri"), Defendant Damascus Castellanos ("Castellanos"), Defendant Brenda Davis ("Davis"), Defendant Thomas C. Hudnut ("Hudnut"), Defendant Wendy Mitchell ("Mitchell"), Defendant Kim Sawyer ("Sawyer"), Defendant Luis Jauregui ("Jauregui"), and Defendant Rich Williams ("Williams") (collectively, "Defendants"). (Dkt. 35 ("Motion" or "Mot.").) Plaintiff Jerry Jamgotchian ("Jamgotchian") and Plaintiff Theta Holding I, Inc. ("Theta Holding") (together, "Plaintiffs") oppose the Motion. (Dkt. 40 ("Opposition" or "Opp.").) Defendants filed a Reply. (Dkt. 41 ("Reply").) In addition, the court ordered the parties to submit supplemental briefing following remand, (Dkt. 70), which the parties submitted. (Dkt. 71 ("D. Supp."); Dkt. 72 ("P. Supp.").) The court held a hearing on this matter on May 9, 2024. (Dkt. 74.) Based on the record, as applied to the applicable law, the Motion is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                          Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

## I.     Background

### A.     California Horse Racing Rules and Regulations

"California law requires that all thoroughbreds racing in California be registered with a private organization called the Jockey Club of New York" (the "Jockey Club"). *Jamgotchian v. Ferraro*, 93 F.4th 1150, 1152 (9th Cir. 2024) (citing Cal. Bus. & Prof. Code § 19416 (defining "thoroughbred horse" to mean any horse "that meets the requirements of and is registered by the Jockey Club of New York, including racing permits issued to foreign thoroughbred horses"); Cal. Code Regs. tit. 4, § 1588(a)(1) ("[A] horse is ineligible to start in any race . . . if such horse is not registered by the Jockey Club if a thoroughbred.")).  The Jockey Club maintains the *American Stud Book*, which governs thoroughbred standards in the United States, the corresponding *Principal Rules and Requirements of the American Stud Book*, and the United States thoroughbred registry.  (*See* Dkt. 20 ("FAC") ¶ 17; *id.* Ex. 4 at 33.)  The Jockey Club relies on the *Principal Rules and Requirements of the American Studbook* in approving and rejecting thoroughbred names.  (*See id.* Ex. 4 at 33.)  Certain "classes of names are not eligible for use."  (*Id.* (citing *Principal Rules and Requirements of the American Studbook* Rule 6(F)11).)  Those classes include, as stated in Rule 6(F)11, "[n]ames that appear to be designed to harass, humiliate, or disparage a specific individual, group of individuals, or entity."  (*Id.*)

Ferraro, Gonzales, Alfieri, Davis, Hudnut, and Mitchell are members of the California Horse Racing Board ("CHRB").  (FAC ¶ 7.)  The CHRB has "jurisdiction and supervision over meetings in [California] where horse races with wagering on their results are held or conducted, and over all persons or things having to do with the operation of such meetings."  Cal. Bus. & Prof. Code § 19420.  CHRB's responsibilities include, but are not limited to, the following:

> (1)  Adopting rules and regulations for the protection of the public and the control of horse racing and parimutuel wagering.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                      Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

    (2)  Administration and enforcement of all laws, rules, and regulations affecting horse racing and parimutuel wagering.
    (3)  Adjudication of controversies arising from the enforcement of those laws and regulations dealing with horse racing and parimutuel wagering.
    (4)  Licensing of each racing association and all persons, other than the public at large, who participate in a horse racing meeting with parimutuel wagering.
    (5)  Allocation of racing dates to qualified associations in accordance with law.

*Id.* § 19440(a).  In addition, CHRB "may delegate to stewards appointed pursuant to Article 5 [of Chapter 4 of the California Business and Professions Code] . . . any of its powers and duties that are necessary to carry out fully and effectuate the purposes of this chapter." *Id.* § 19440(b).

Sawyer, Jauregui, and Williams are members of the Los Alamitos Board of Stewards ("Board of Stewards").  (FAC ¶ 5.)  The Board of Stewards has "general authority and supervision over all licensees and other persons attendant on horses, and also over the inclosures of any recognized meeting."  Cal. Code Regs. tit. 4, § 1527.  It is also "strictly responsible to the [CHRB] for the conduct of the race meeting in every particular." *Id.*

**B.      Summary of the FAC's Allegations[1]**

Plaintiffs own a thoroughbred horse named Malpractice Meuser (the "Horse").  (FAC ¶¶ 4-5, 9.)  Plaintiffs attempted to obtain a certificate of registration for the Horse from the

---

[1] For purposes of the Motion, the court "accept[s] factual allegations in the [FAC] as true and construes the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                     Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

Jockey Club, but in January 2021 the Jockey Club denied Plaintiffs' request on the grounds that the Horse's name was "not eligible for use" under Rule 6(F)11.  (*Id.* ¶¶ 29-30, Ex. 4 at 33.) "The Jockey Club believed that Malpractice Meuser was named for Michael D. Meuser, a Kentucky lawyer specializing in equine law." *Jamgotchian*, 93 F.4th at 1152.

On June 15, 2022, Plaintiffs attempted to enter the Horse in a thoroughbred race at Los Alamitos Race Course.  (FAC ¶ 16.)  On July 1 and July 2, 2022, the Board of Stewards denied Plaintiffs' request because the Horse was not registered with the Jockey Club.  (*Id.* ¶ 17.) Specifically, the Board of Stewards wrote in an email that the Horse "isn't eligible to race in California per CHRB rule #1588 (Horse Ineligible to Start in a Race)," which rule is reflected in Cal. Code Regs. tit. 4, § 1588(a)(1), because "[i]t is required the registration be completed with The North American Jockey Club" and "your horse has not been issued a Jockey Club Foal Registration Certificate, which is mandatory in California."  (*Id.* Ex. 4 at 28.)

On July 4, 2022, Plaintiffs timely appealed the Board of Stewards' decision to the CHRB. (*Id.* ¶ 19.)  The CHRB held a hearing on the matter on July 20, 2022, before a hearing officer. (*Id.* ¶ 20.)  The hearing officer issued a 17-page proposed decision on August 29, 2022, and the CHRB adopted the proposed decision on September 15, 2022.  (*Id.* ¶ 20, Ex. 5.)  In summary, the CHRB determined that the Board of Stewards "correctly interpreted and applied Rule 1588 to deny entry of the horse *Malpractice Meuser* to thoroughbred races at Los Alamitos because he was not registered with The Jockey Club of New York."  (*Id.* Ex. 5 at 52.)

In this case, which Plaintiffs filed on October 17, 2022, (Dkt. 1), Plaintiffs assert claims against Defendants—the individual members of the CHRB and the Board of Stewards—for violation of their constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, contending that Defendants' decisions constituted unconstitutional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

viewpoint discrimination and a violation of due process through unlawful delegation.[2]  (*Id.* ¶¶ 7, 39-70.)  Plaintiffs also allege Defendants violated the California Constitution.  (*Id.* ¶¶ 71-73.)  Plaintiffs seek monetary damages in excess of $250,000, injunctive relief including that "Defendants be ordered to allow *Malpractice Meuser* to enter and race in California," attorney fees, and costs.  (*Id.* at 19 (Prayer for Relief).)

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level."  (*Id.* at 555) (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  "A

---

[2] Plaintiffs' FAC contains separate claims for violations of their constitutional rights and violation of their civil rights under 42 U.S.C. Section 1983, but they "urge the Court to, as [the court] did in response to Plaintiffs' Motion for Preliminary Injunction, construe Claim One as part of Plaintiffs' section 1983 claims.'"  (Opp. at 20 (citing Dkt. 39); P. Supp. at 13.)  The court will do so.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                          Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." (*Id.* at 996) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." (*Id.*) (quoting *Starr*, 652 F.3d at 1216; *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

In *Sprewell v. Golden State Warriors*, the Ninth Circuit described legal standards for motions to dismiss under Rule 12(b)(6):

> Review is limited to the contents of the complaint. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.

266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).

## III.    Discussion

Defendants argue that the court should dismiss the FAC because Defendants are entitled to (1) quasi-judicial immunity, (2) qualified immunity, and (3) sovereign immunity. (*See* D. Supp. at 1-4, 11-13.)

### A.    Quasi-Judicial Immunity

"[T]here are some officials whose special functions require a full exemption from liability." *Butz v. Economou*, 438 U.S. 478, 508 (1978). "The paradigmatic functions giving rise to absolute immunity are those of judges and prosecutors." *Buckwalter v. Nevada Bd. of Med. Examiners*, 678 F.3d 737, 740 (9th Cir. 2012), *as amended* (June 8, 2012). Absolute

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

judicial immunity "insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives, or when the exercise of judicial authority is 'flawed by the commission of grave procedural errors.'" *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002), *as amended* (Sept. 6, 2002) (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)). "This immunity reflects the long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004) (quoting *Bradley v. Fisher,* 13 Wall. 335, 347 (1871)). This immunity "'is not reserved solely for judges[] but extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" *Burton v. Infinity Cap. Mgmt.*, 862 F.3d 740, 747 (9th Cir. 2017) (quoting *In re Castillo*, 297 F.3d at 947).

"The Supreme Court has recognized that individuals, when performing functions that are judicial in nature, or who have a sufficiently close nexus to the adjudicative process, are entitled to a grant of absolute quasi-judicial immunity." *In re Castillo*, 297 F.3d at 948; *Buckwalter*, 678 F.3d at 740 ("Absolute immunity is also accorded to officials of government agencies performing certain functions analogous to those of a prosecutor or a judge.") (internal quotation omitted). Nonjudicial officers are entitled to absolute quasi-judicial immunity "if they perform official duties that are functionally comparable to those of judges, i.e., duties that involve the exercise of discretion in resolving disputes." *In re Castillo*, 297 F.3d at 948 (discussing the holding of *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993)). "[T]o determine whether a nonjudicial officer is entitled to absolute quasi-judicial immunity, courts must look to the nature of the function performed and not to the identity of the actor performing it." *Id.* "[I]t is only when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer." *Id.* at 949.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                                Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

"To determine whether a particular state officer's role is functionally comparable to that of a judge, [courts] consider six nonexclusive factors, decocted from *Butz,* that indicate a judicial function: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Buckwalter*, 678 F.3d at 740 (cleaned up). If a court applying these factors determines that an official was functioning in a judicial or quasi-judicial capacity when they undertook the act giving rise to the Section 1983 suit, then absolute immunity protects the official from liability. *Id.*

Here, Plaintiffs challenge Defendants' action of enforcing a California law requiring horses racing in California to be registered with the Jockey Club and thereby "refus[ing] permission for *Malpractice Meuser* to race in California." (FAC ¶ 17; *see id.* ¶ 21 (challenging "the denial of entry to race"); *id.* ¶ 27 ("refused entry to race")); *see Jamgotchian*, 93 F.4th at 1153 (characterizing challenge as to "enforcement of the Jockey Club registration requirement in § 19416"). Applying the relevant factors, the court finds Defendants are absolutely immune from suit because they are entitled to quasi-judicial immunity.

Regarding the first factor, the court finds that the CHRB's purpose of regulating and enforcing regulations of California's race horsing industry creates a need to assure that members of the CHRB and Board of Stewards can perform their functions, which help protect the public and also concern animal welfare, without harassment or intimidation. *See Mishler v. Clift*, 191 F.3d 998, 1005 (9th Cir. 1999) (finding that Nevada Board of Medical Examiners, which existed "to ensure that qualified and competent persons practice medicine in the State of Nevada" and sometimes "discipline[d] physicians" had absolute immunity when "[i]n view of the public interest of ensuring quality health care, there is a 'strong need' to make certain that Board Members can perform these disciplinary functions without the threat of harassment or

---

**CIVIL MINUTES – GENERAL**                                                                 9

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                              Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

intimidation"); *Buckwalter*, 678 F.3d at 743 ("[T]he Board Members' interest in performing their functions free from harassment is at its apex when a physician poses a serious threat to public safety."). Put differently, a fear of harassment or intimidation might negatively affect members of the CHRB or Board of Stewards' ability to effectuate their duties to apply California law and protect the public and animals. *Buckwalter*, 678 F.3d at 743 ("Abrogating absolute immunity for summary suspensions could make Board Members hesitant to act quickly and decisively to protect the public."). The court therefore finds the first factor weighs in favor of finding that Defendants are entitled to quasi-judicial immunity.

Regarding the second factor, the court finds there are safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct. *See Buckwalter*, 678 F.3d at 740. The CHRB and Board of Stewards perform their duties and functions pursuant to California statutes and regulations, which provide adequate safeguards including an administrative process with the availability of judicial review. *See* Cal. Code Regs. tit. 4, § 1761 ("From every decision of the stewards, except a decision concerning the disqualification of a horse due to a foul or a riding or driving infraction, an appeal may be made to the [CHRB].."); Cal. Bus. & Prof. Code § 19517 ("The board, upon due consideration, may overrule any steward's decision other than a decision to disqualify a horse due to a foul or a riding or a driving infraction in a race, if a preponderance of the evidence indicates" certain circumstances.); *see generally* Cal. Code Regs. tit. 4, §§ 1400-15 (governing CHRB powers and jurisdiction); *see, e.g., id.* § 1414 (providing for appointment of hearing officers "for the taking of evidence in any matter pending before the Board" which "shall report to the Board outlining all findings and the Board shall determine the matter as if such evidence had been presented to the full Board"); *see also Mishler*, 191 F.3d at 1005 ("The argument that adequate procedural safeguards exist is difficult to dispute. The Nevada Board performs its duties and functions under a comprehensive umbrella of statutes and the Nevada Administrative Procedure Act. These procedures provide adequate safeguards that are comparable to those available in federal law. The umbrella of the Nevada statutory scheme 'reduce[s] the need for private damages

---

**CIVIL MINUTES – GENERAL**                                              **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

actions as a means of controlling unconstitutional conduct.'"). The court therefore finds the second factor weighs in favor of finding that Defendants are entitled to quasi-judicial immunity.

Regarding the third factor—Defendants' insulation from political influence—the court finds Defendants are sufficiently independent. CHRB members are "appointed by the Governor." Cal. Bus. & Prof. Code § 19421; *see Buckwalter*, 678 F.3d at 742 (considering appointment by the governor as an indicator of independence); *Mishler v. Clift*, 191 F.3d 998, 1007 (9th Cir. 1999) (similar). And they can be removed "for incompetence, neglect of duty or corruption." Cal. Bus. & Prof. Code § 19426; *see Buckwalter*, 678 F.3d at 742 (considering removability for good cause as an indicator of independence); *Mishler*, 191 F.3d at 1007 (similar). The court therefore finds the third factor weighs in favor of finding that Defendants are entitled to quasi-judicial immunity.

As to the fourth factor, the court observes it is not clear from the record before the court whether the CHRB and Board of Stewards as a matter of practice rely on precedent in making their decisions. *See Buckwalter*, 678 F.3d at 744 (explaining "the fourth *Butz* factor points in neither direction" when "it is unclear whether the Board Members rely on precedent when they exercise their summary authority"). However, the court observes that the CHRB's decision lists California statutes and regulations as "Applicable Laws and Regulations," (FAC Ex. 5 at 39-40), and cites California statutes, regulations, and judicial authority, in addition to federal statutes and judicial authority, throughout its analysis, (*id.* at 42-51). The court therefore finds that the fourth factor, at a minimum, "points in neither direction," *Buckwalter*, 678 F.3d at 744, but likely weighs in favor of finding that Defendants are entitled to quasi-judicial immunity.

Finally, the court finds the fifth and sixth factors weigh in favor of immunity because the process is adversarial and error is correctible on appeal. *See* Cal. Code Regs. tit. 4, § 1761 ("From every decision of the stewards, except a decision concerning the disqualification of a horse due to a foul or a riding or driving infraction, an appeal may be made to the [CHRB].");

---

**CIVIL MINUTES – GENERAL**                                                                11

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                           Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

Cal. Bus. & Prof. Code § 19517 ("The board, upon due consideration, may overrule any steward's decision other than a decision to disqualify a horse due to a foul or a riding or a driving infraction in a race. . . ."); *see also* Cal. Bus. & Prof. Code § 19440(a) (granting CHRB responsibilities including "Adjudication of controversies arising from the enforcement of those laws and regulations dealing with horse racing and parimutuel wagering"); *Buckwalter*, 678 F.3d at 744 ("But the last *Butz* factor, the correctability of errors on appeal, favors absolute immunity: an erroneous summary suspension may be corrected in either the postdeprivation hearing or in Nevada state court in a subsequent appeal."). Indeed, before the CHRB both Jamgotchian and the CHRB were represented by counsel or other representatives, and both sides submitted briefs and exhibits. (FAC Ex. 5 at 36-37.)

On balance, the court concludes the relevant factors weigh in favor of finding that Defendants are entitled to absolute quasi-judicial immunity. Accordingly, the court finds that when the Board of Stewards "issued rulings" refusing permission for the Horse to race in California, (*id.* ¶ 20), and when the CHRB "affirm[ed] the denial by the CHRB Board of Stewards (Board of Stewards Defendants) of Malpractice Meuser entry to race," (*id.* ¶ 20), Defendants (members of the Board of Stewards and the CHRB) were "perform[ing] the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Burton*, 862 F.3d at 747. Similarly, the court finds that Defendants' challenged actions— applying California law, specifically California Business and Professions Code Section 19416 and California Code of Regulations title 4 Section 1588(a)(1), to the facts presented to them relating to Plaintiffs' Horse—were "official duties that are functionally comparable to those of judges." *In re Castillo*, 297 F.3d at 948. Put another way, the court finds Defendants' actions were "judicial or closely associated with the judicial process." *Buckwalter*, 678 F.3d at 740.

Plaintiffs argue that Defendants' "disputed decision—refusing to certify *Malpractice Meuser* for failing to have TJC certification as required by Section 19416—fell squarely within their administrative responsibilities to blindly follow Section 19416, a role distinct from any

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                              Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

other arguably quasi-judicial function they may also be asked to undertake, such as disciplining those within the California horse racing industry."  (Opp. at 8; *see id.* at 9 ("In short, Defendants merely applied the law with no analysis, judgment or discretion by denying Plaintiffs the right to race, essentially admitting that their hands were tied because they did not have the authority or discretion to grant Plaintiffs' request."); P. Supp. at 9 ("Here, the CHRB freely admits is has *no discretion* to grant Plaintiffs' request, it has *no discretion* to interpret a statute as unconstitutional; it has *no discretion* to refuse to enforce the statute because it is unconstitutional.".)  But Plaintiffs' argument that Defendants lacked the ability to choose not to apply the law misses the point.  The fact that Defendants were constrained to follow existing law—that is, the fact that California Business and Professions Code Section 19416 required Defendants not to certify the Horse because he was not registered with the Jockey Club—does not mean that their actions were not sufficiently judicial in nature.  Indeed, this court is required to apply existing law and lacks discretion to deviate from binding precedent.  *See, e.g., Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority, for example, has no choice but to follow it, even if convinced that such authority was wrongly decided."); *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (stating "[d]istrict courts are, of course, bound by the law of their own circuit"); *see also Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) ("As a circuit court, even if recent Supreme Court jurisprudence has perhaps called into question the continuing viability of [its precedent], we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court.") (citation and quotation marks omitted).  But that does not mean that the court's decisions applying the law are not judicial in nature.  Put another way, the heart of Plaintiffs' suit is the allegedly unconstitutional nature of the Jockey Club's rule, but the CHRB and Board of Stewards are immune from suit for enforcing that rule as California law required them to do.[3]

---

[3] The CHRB recognized this, explaining:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

Indeed, Plaintiffs' suit is akin to suing the judge who enforced a statute the plaintiff argues is unconstitutional.

In summary, "[v]iewing the six factors as a totality," the court determines that the Board of Stewards and the CHRB were "functionally comparable to judges, and that" the actions Plaintiffs challenge were quasi-judicial acts for which they are absolutely immune from liability. *Buckwalter*, 678 F.3d at 741-42. Thus, the court concludes quasi-judicial immunity bars Plaintiff's claims against Defendants for both monetary and injunctive relief. *See id.; Mireles*, 502 U.S. at 9 ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages."); *Stafne v. Zilly*, 820 F. App'x 594, 595 (9th Cir. 2020) ("The judicial or quasi-judicial immunity available to federal officers is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief.") (quoting *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1394 (9th Cir. 1987)). Accordingly, the Motion is **GRANTED**.

---

> It is undisputed that, in this case, the stewards were not at all interested in the reason why Jamgotchian was unable to produce proof of registration of his horse with The Jockey Club. The stewards asked only that proof of registration be provided. Neither the stewards nor the CHRB participated in The Jockey Club's decision in any way, nor did it adopt any course of action proposed or recommended by The Jockey Club. Simply put, the stewards did not forbid Jamgotchian to enter *Malpractice Meuser* in any thoroughbred races because the horse's name was disparaging, or for any reason related to the horse's name at all. To the extent Jamgotchian feels he has been wronged by a denial of his request to use his chosen racehorse name, his complaint is properly addressed to The Jockey Club.

(FAC Ex. 5 at 49-50.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

---

**B.      Qualified Immunity**

Even if Defendants were not entitled to quasi-judicial immunity, they would be entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Because qualified immunity is an entitlement not to go to trial, not merely a defense from liability, it should be decided early in the proceedings.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  Analysis of the qualified immunity defense is generally a two-prong inquiry.  *Id.*  Under the first prong, a court must consider "whether a constitutional right would have been violated on the facts alleged."  *Id.*  Under the second prong, a court must also consider whether that right was "clearly established."  *Id.*  "Clearly established" means the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 201 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 201. "While we do not require a case on all fours, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

A plaintiff "bears the initial burden of proving that the rights allegedly violated. . . were clearly established at the time of the alleged misconduct."  *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992).  If the plaintiff meets his burden, then the burden shifts to the defendant to establish his actions were reasonable, even if they violated the plaintiff's rights.  *Id.*  "[T]he proper fact-specific inquiry . . . is not whether the law is settled, but whether, in light of clearly

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                                   Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

established law and the information available to him, a reasonable person in [the defendant's] position could have objectively believed his actions to be proper." *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991) (citing *Anderson*, 483 U.S. at 641). "Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Rico*, 980 F.3d at 1298 (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)).

In cases when the allegedly unconstitutional action the defendant took consists solely of the enforcement of a law that was duly enacted, the usual two-part qualified immunity test is less useful. *Grossman v. City of Portland*, 33 F.3d 1200, 1208 (9th Cir. 1994) ("We believe that the various two- and three-part tests which we have occasionally employed in qualified immunity cases would not be of any particular value in applying the *Harlow/Anderson* test here."). In such cases, courts look to whether the defendant acted with objective reasonableness. *Id.* "Courts have accordingly held that the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Id.* at 1209. "[A]n officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability." *Id.* at 1210.

The court finds that Defendants are entitled to qualified immunity because the FAC's facts and exhibits reflect that Defendants acted with objective reasonableness. Defendants were presented with an application for a horse that was not registered with the Jockey Club to race in California. In rendering a decision on that application or the appeal of that decision, Defendants correctly applied a California law that said that all thoroughbreds racing in California must be registered with the Jockey Club. *See* Cal. Bus. & Prof. Code § 19416; Cal. Code Regs. tit. 4, § 1588(a)(1); *see also* FAC Ex. 5 at 52 (CHRB decision determining that the Board of Stewards "correctly interpreted and applied Rule 1588 to deny entry of the horse *Malpractice Meuser* to thoroughbred races at Los Alamitos because he was not registered with The Jockey Club of New York"). In this case, all Plaintiffs assert that Defendants did wrong is apply that law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

Under these circumstances, the court finds Defendants are entitled to qualified immunity.  *See Grossman*, 33 F.3d at 1208.

It is true that "[w]here a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity."  *Grossman*, 33 F.3d at 1209.  But the parties have cited no authority, and the court has found none, that shows that Defendants' action of enforcing the California law requiring thoroughbreds be registered with the Jockey Club would have been "patently violative of fundamental constitutional principles."  *Id.*  In other words, no clearly established law would have put Defendants on notice that applying existing California law would violate a horse owner's constitutional rights.  *Walters v. Cate*, 2013 WL 1859223, at *12 (C.D. Cal. Apr. 8, 2013), *report and recommendation adopted,* 2013 WL 1859228 (C.D. Cal. May 1, 2013) ("No court has held that a prison official's collection of an administrative fee authorized by Section 2085.5 is unconstitutional, let alone that it violates the Ex Post Facto Clause or the Takings Clause.  Thus, whether the administrative fee under Section 2085.5 violated either constitutional provision, it was not clearly established and, therefore, defendants are entitled to qualified immunity.").  "A reasonable person in the defendants' position could have believed that his or her conduct was lawful in light of clearly established law and the information the person possessed at the time the conduct occurred."  *Id.*; *see also Ellington v. California Dep't of Corr. & Rehab.*, 2021 WL 8875767, at *5 (C.D. Cal. Oct. 14, 2021) (finding defendants "entitled to qualified immunity because Plaintiff acknowledges they removed him from the kosher meal program on the basis of Section 3054.5, which permits removal from the program for violations of the Religious Diet Program Agreement" and "it was reasonable for defendants Lake and the Religious Review Committee (Does 1-10) to believe they were not violating clearly established law when they removed him from the kosher meal program as permitted by Section 3054.5"); *Nemo v. City of Portland*, 910 F. Supp. 491, 499 (D. Or. 1995) ("Burks similarly should be allowed to rely on the Square policy.  Because the policy was adopted by his employer, Pioneer Courthouse Square, Inc., and was not patently unconstitutional, Burks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

was entitled to assume that the policy he was enforcing was constitutional.  In fact he had a duty to enforce his supervisors' edict in performing his job.  Plaintiffs have not submitted any evidence from which it may be inferred that Burks acted in bad faith.  Thus, Burks is entitled to summary judgment in his favor."); *Nishi v. Cnty. of Marin*, 2012 WL 566408, at *9 (N.D. Cal. Feb. 21, 2012) ("[D]efendants are entitled to qualified immunity because it was objectively reasonable for them to rely on the Marin County Open Space's determination that the camping ban was constitutional.  Moreover, the circumstances that would preclude qualified immunity are not present here.  The camping ban was not so "patently violative of fundamental constitutional principles" that the defendants should not have enforced it.  Nor did the defendants enforce the statute in a particularly egregious manner. They merely cited plaintiff for his violations and gave him time to move his property from public land.").  The court therefore concludes that Defendants are entitled to qualified immunity.  Even if Plaintiffs' claims were not dismissed on the basis of quasi-judicial immunity, then, the court would dismiss Plaintiffs' claims against Defendants for money damages.[4]

---

[4] The court notes that Defendants also argue Plaintiffs fail to state a Section 1983 claim because they do not sufficiently allege any state action.  (Mot. at 10; D. Supp. at 10-11.)  However, the court is not persuaded on this point.  "State action analysis begins with 'identifying the specific conduct of which the plaintiff complains.'" *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1108 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 783 (2023) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)).  As stated, in this case Plaintiffs complain that Defendants refused permission for the Horse to race in California by enforcing the California law requiring horses racing in California to be registered with the Jockey Club.  (FAC ¶¶ 17, 21, 27.)  The court finds Defendants' decision to refuse permission for the Horse to race in California constituted an action taken under color of state law because Defendants, as members of the CHRB and the Board of Stewards, "possessed by virtue of state law" the power to decide Plaintiffs' application for the Horse to race.  *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015); *see* Cal. Bus. & Prof. Code § 19420 (describing CHRB jurisdiction); *id.* § 19440(a) (listing CHRB responsibilities to include "[a]dministration and enforcement of all laws, rules, and

---

**CIVIL MINUTES – GENERAL**                                         **18**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

### C.    Sovereign Immunity

Finally, even if Defendants were not entitled to quasi-judicial immunity or sovereign immunity, the court finds Defendants would be entitled to sovereign immunity.  Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  The Eleventh Amendment operates as "an explicit limitation on the judicial power of the United States," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984) (quoting *Missouri v. Fiske*, 290 U.S. 18, 25 (1933)), which "deprives a federal court of the power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction," *id.* at 120.  The Eleventh Amendment also bars suits in federal court against states, state agencies, and state officials in their official capacity.  *See Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967-68 (9th Cir. 2010).  "The party asserting Eleventh Amendment immunity has the burden of proving its

---

regulations affecting horse racing" and "[a]djudication of controversies arising from the enforcement of those laws and regulations dealing with horse racing"); *id.* § 19440(b) (describing CHRB authority to delegate powers and duties to stewards); Cal. Code Regs. tit. 4, § 1527 (noting that the Board of Stewards has "general authority and supervision over all licensees and other persons attendant on horses, and also over the inclosures of any recognized meeting" and is "strictly responsible to the [CHRB] for the conduct of the race meeting in every particular").  Indeed, Defendants concede "[they] were enforcing state law in refusing entry of Malpractice Meuser."  (Mot. at 10; D. Supp. at 10.)  Thus, the court finds Plaintiffs plausibly allege state action.  *See Chaudhry v. Aragon*, 68 F.4th 1161, 1169 n.10 (9th Cir. 2023) (finding this element satisfied when "defendants were employees of California Department of Public Health" and acted under color of state law when they allegedly denied the surgeon and medical group plaintiffs an opportunity to be heard before publishing a purportedly erroneous investigative report on an unsuccessful cardiac surgery the surgeon performed).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

applicability." *Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir. 1997) (citing *ITSI TV Prods., Inc. v. Agricultural Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993)).

Plaintiffs contend that the *Ex parte Young* exception to sovereign immunity applies to their suit against Defendants.  (Opp. at 10-13; Pl. Supp. at 10-13.)  The *Ex parte Young* doctrine acts as a limited exception to sovereign immunity in suits "seeking prospective relief against a state official for a violation of federal law" "[b]ecause a state officer who violates federal law acts outside the scope of her authority" and "is [thus] subject to a federal court's injunctive power."  *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1220 (9th Cir. 2023) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).  To determine whether the *Ex parte Young* doctrine applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)).  "[T]he plaintiff must allege—not prove—an ongoing violation of federal law for which she seeks prospective injunctive relief."  *R.W.*, 77 F.4th at 1220 (citing *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019)).  "[A] plaintiff must show that an injunction against a particular official 'would significantly increase the likelihood' of relief, not that relief 'is a guarantee.'"  *Id.* at 1227 (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 900 (9th Cir. 2022)).  In this case, for the reasons explained in Section III.B., *supra*, the court finds Plaintiffs' allegations that Defendants violated their federal constitutional rights by correctly applying existing California law fail to sufficiently allege an "ongoing violation of federal law.'"  *Va. Off. for Prot. & Advoc.*, 563 U.S. at 255.  The court therefore rejects Plaintiffs' contention that the *Ex parte Young* exception to sovereign immunity applies.

Moreover, "the *Ex parte Young* exception applies only where the state officials are allegedly violating federal law; it does not reach suits seeking relief against state officials for violations of state law."  *Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 950 (N.D. Cal. 2014)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

(citation omitted); *see also Pennhurst*, 465 U.S. at 106 ("[W]hen a plaintiff alleges that a state official has violated state law," "the entire basis for the [*Ex parte Young*] doctrine . . . disappears").  Therefore, even if the *Ex parte Young* doctrine did not bar Plaintiffs' claims against Defendants for violations of federal law, it would bar Plaintiffs' claims against Defendants for violation of the California Constitution.

**D.      Leave to Amend**

"Although leave to amend 'shall be freely given when justice so requires,' it may be denied" when it "would not serve any purpose because to grant it would be futile in saving the plaintiff's suit."  *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)).  "Amendment is futile if the claim sought to be added is not viable on the merits."  *Hooper v. Shinn*, 985 F.3d 594, 622 (9th Cir. 2021).  The court finds that is the case here.  Nothing in the record suggests that Plaintiffs could allege new facts sufficient to plausibly state a claim against Defendants.  Although Plaintiffs request leave to amend, the court observes that they do not offer any explanation regarding how further amendment could cure the identified deficiencies.  (*See* P. Supp. at 14 (stating with regard to leave to amend only that "[i]n the event that the Defendants' Motion is granted, in any part, Plaintiffs request that the Court grant leave to file a further amendment"); Opp. at 21 (same)); *Treadstone Servs. v. Blue Shield of California Life & Health Ins. Co.*, 2024 WL 2002999, at *6 (C.D. Cal. Mar. 27, 2024) ("Nothing in the record suggests that Treadstone could allege any new facts that would suffice to plausibly state its claims, and Treadstone does not offer any explanation regarding how further amendment could cure the identified deficiencies.") (citing *Vieira v. Mentor Worldwide, LLC*, 392 F. Supp. 3d 1117, 1130 (C.D. Cal. 2019), *aff'd*, 845 F. App'x 503 (9th Cir. 2021) ("The Court denies leave to amend because Plaintiffs have not explained how further amendment could cure the pleading deficiencies in their Complaint.")); *see also Walters*, 2013 WL 1859223, at *12 ("Here, it does not appear that any further amendment to the SAC could cure the deficiencies as to the issue of qualified immunity.  Thus,

**CIVIL MINUTES – GENERAL**                                                              **21**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:22-cv-01893-FWS-KES                    Date: August 12, 2024
Title: Jerry Jamgotchian, *et al.* v. Gregory L. Ferraro, *et al.*

plaintiff's claims against defendants' in their individual capacities for monetary damages should
be dismissed without leave to amend.").  Accordingly, the court will dismiss Plaintiffs' FAC
without leave to amend.

**IV.    Disposition**

For the reasons stated above, the Motion is **GRANTED**.  Plaintiffs' FAC is
**DISMISSED WITHOUT LEAVE TO AMEND**.

Initials of Deputy Clerk:  mku